# Logan A. Marshall *v.* Franklin Fire Insurance Company of Philadelphia, Appellant.

[Marked to be reported.]

*Insurance—Fire insurance—Perpetual insurance.*

A fire insurance company issued a policy described on its face as one " of permanent insurance," and in its caption called " perpetual." The company undertook " to be and remain forever liable to the said assured, his heirs, executors, administrators and assigns " for any loss by fire to the buildings insured not exceeding a certain amount but the holder might surrender the policy and reclaim his deposit less five per cent. The policy also contained this clause : " In case any assured shall assign or transfer his or her policy, such assignment or transfer shall be brought to the office of the company to be entered and allowed, within thirty days next after such assignment or transfer, and in default thereof the benefit of the insurance and all claims upon the company shall be lost. For every transfer of a policy, there shall be paid fifty cents." The policy was issued in 1839. In 1882 the owner of the property who was also an assignee of the policy took it, within thirty days from the assignment, to the office of the insurance company, tendered fifty cents and demanded that it be entered and allowed. The company, however, refused to approve of the transfer of the policy, giving as its only reason that it did not allow a transfer on old perpetual policies. *Held*, (1) that under the proper construction of the word " allow " the insurance company could not arbitrarily and at will refuse to allow the transfer, but that it could do so for cause, and in harmony with the purpose and spirit of the contract; (2) that if the situation, habits and moral character of the transferee were unobjectionable and did not increase the hazard of loss, the insurance company could not refuse to allow the transfer; (3) that the reason given by the insurance company for refusing to allow the transfer in this case was insufficient; (4) that the transferee was entitled to treat the contract as terminated by the company, and to recover as damages what he would have to pay in the market for that which the defendant had refused to provide in the manner contemplated by the contract; (5) that the transferee could sue for damages in his own name without using the name of the party originally insured as legal plaintiff; (6) that it is not necessary for the transferee to go into equity inasmuch as the cause of action grows out of a violation of a contract, and is properly redressed by the recovery of damages by way of compensation; (7) that the contract did not run with the land in the common law sense of that phrase, but it was in express terms a contract to indemnify the owner of the property insured, he being also the holder of the policy, and in this respect the contract was distinguishable from the ordinary policy of insurance.

Argued May 21, 1896.   Appeal, No. 380, Jan. T., 1896, by defendant, from judgment of C. P. York Co., Aug. T., 1882, No. 67, on verdict for plaintiff.   Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Assumpsit to recover damages for an alleged breach of contract on a policy of fire insurance.   Before BRUBAKER, J., of the 2d judicial district, specially presiding.

The facts of the case appear by the case stated which was as follows:

And now, March 17, 1896, it is hereby agreed by and between the attorneys for the parties, plaintiff and defendant, above named, that the following case be stated for the opinion of the court in the nature of a special verdict:

1. On May 16, 1839, the defendant, a duly incorporated company of Pennsylvania, executed and delivered to John Hartman, a policy of insurance, a copy of which, together with the entries, indorsements, assignments and approvals, is hereto annexed, and made a part hereof.

2. On the 4th day of March, 1854, the said John Hartman having died, and letters testamentary having been duly granted to Granville Hartman and Daniel Hartman, the said Granville Hartman and Daniel Hartman, executors of John Hartman, duly assigned in writing all the title and interest of the said John Hartman in the said insurance policy to Elijah Howe, which said assignment was duly entered and allowed by the company defendant.

3. On November 4, 1854, the said Elijah Howe duly assigned in writing all his title and interest in the said policy unto Mary Hartman, as security for a mortgage of three thousand dollars ($3,000) on the insured property, and after her death or marriage, to the executors of John Hartman, deceased.   The said mortgage was recorded in the recorder's office of York county, in mortgage book S, page 283.   The said assignment was duly entered and allowed by the said company defendant.

4. On September 12, 1857, the said Elijah Howe, in writing, duly assigned all his title and interest to Jane Ginder, in the said policy, subject to the above mentioned assignment to Mary Hartman, and executors of John Hartman, deceased, which said assignment was duly entered and allowed by the said company defendant.

5. On the 3d of April, 1871, the said mortgage of $3,000 was paid to the executors of John Hartman, the said Mary Hartman having died, and on the said day satisfaction of the said mortgage was entered upon the record thereof by the said executo.'s in the recorder's office of York county.

6. By properly executed and delivered deeds and conveyances, the title to the property insured was, at the time of the said assignment of September 12, 1857, from Elijah Howe, vested in the said Jane Ginder, who died seized and possessed thereof.

7. After the death of the said Jane Ginder, in accordance with proceedings duly had and conducted in the orphans' court of York county, for the partition and sale of said insured property, Samuel Hay, the duly authorized administrator of the said Jane Ginder, conveyed to Logan A. Marshall, on the 29th day of March, 1882, the said insured property.

8. On the 30th day of March, 1882, said Samuel Hay, administrator of Jane Ginder, duly assigned, in writing, all the title and interest of the said Jane Ginder in the said policy to Logan A. Marshall, the then owner of the insured property.

9. Within thirty days next after the 30th of March, 1882, the time of said assignment of said policy to said Logan A. Marshall, the said assignment was brought to the office of the said company defendant in Philadelphia, to be entered and allowed, by Hon. W. F. Bay Stewart, at that time of counsel for the said Logan A. Marshall, the plaintiff, who then and there tendered the said policy to James W. McCallister, then vice president of the defendant company, together with fifty cents (50c.), the fee in said policy mentioned for transfer of assignments, and demanded that the transfer of the said policy to Logan A. Marshall be entered and allowed; whereupon the said James W. McCallister, vice president of the said defendant company as aforesaid refused to enter and allow the said assignment and transfer, giving as the reason, and the only reason thereof, that the said company defendant did not allow transfers on these old perpetual policies.

10. On the 30th of March, 1882, and at no time subsequently, was it possible for the said plaintiff to procure a perpetual policy similar in character, and as favorable to him as the one upon which this suit is brought.

11. The cheapest annual rate at which the plaintiff since said date of 1882 could get the same insurance upon his buildings as in said policies was $45.00 per year.

If the court be of the opinion upon the above stated facts that the plaintiff has a right of action against the defendant and that the measure of damages is the amount of the premium or deposit, then judgment to be entered for the plaintiff and against the defendant for $120, with interest thereon from April 30, 1882.

If the court be of opinion that the plaintiff has a right of action, and that the measure of damages is the cost of procuring perpetually the same amount of insurance upon plaintiff's property, then judgment to be entered for the plaintiff and against the defendant for $750, with interest from April 30, 1882.

If the court be of opinion that upon the facts stated, plaintiff has no cause of action against the defendant, then judgment to be entered for the defendant.

Cost to follow judgment. The right of appeal is reserved to either party.

The policy was in part as follows:

## THE POLICY.

FRANKLIN FIRE INSURANCE COMPANY OF PHILADELPHIA..

Office, No. 163½ Chestnut Street.

No. 2624.              PERPETUAL.              $4,000.00.

THIS POLICY OF INSURANCE

Witnesseth that

THE FRANKLIN INSURANCE COMPANY OF PHILADELPHIA

Have received of—John Hartman—One hundred & twenty dollars—cents—by way of Premium or Deposite (according to the terms and conditions of said Company, hereto annexed) to indemnify the said—John Hartman—for all damage or loss which—he may sustain, at any time after the date hereof (not exceeding, in any case, the sum or sums hereinafter recited) by reason or by means of Fire happening to the property herein described—to wit:—*A two-story brick building*, occupied as a Tavern or Public House, situate adjoining the new Court House

on High St., in the Borough of York, York County, Pennsylvania—$3000.00. *And on brick stable*, on same lot—$1000.00.—

In conformity with a survey No. 2624—Signed by Charles Laumaster for the assured, and deposited in this office.

Now know all men by these presents, That in consideration of the premises, the Capital Stock, Estate and Securities of the Franklin Fire Insurance Company of Philadelphia, shall be and remain forever, subject and liable to pay, make good and satisfy unto the said assured—his heirs, executors, administrators or assigns, all such damage or loss not exceeding the sum of $4000.00—Say—Four Thousand Dollars, which may at any time hereafter happen by reason or by means of Fire, to the property herein before described, unless the said Company shall within twenty days after the proof of such damage, if the loss be not total, give directions for putting the same into as good a state of repair as it was before it was so injured by fire; or shall, within thirty days after such proof, pay for such damage according to an estimate thereof to be made by arbitrators indifferently chosen; or if a total loss, shall, with all convenient speed, rebuild the same, or pay the estimated value of such property at the time of such total loss, within ninety days after the amount shall be ascertained by arbitrators indifferently chosen.

In witness whereof, the Common Seal of the said Company is hereto affixed this sixteenth day of May—in the year of Our Lord One thousand Eight Hundred and Thirty-nine.—

CHAS. G. BANIKER,

Secretary.                                          President.

---

THE

FRANKLIN FIRE INSURANCE COMPANY OF PHILADELPHIA,

established by Law

FOR MAKING INSURANCE AGAINST FIRE ONLY.

Office, No. 106 Chestnut Street.

Terms and conditions by the Franklin Fire Insurance Company of Philadelphia, for the making of permanent insurances on buildings.

1. Every person making insurance on any building shall deposite with the company, a certain sum for every one hundred dollars insured, according to the greater or less hazard of the building, and shall pay for the policy and for surveying the premises, the sum of three dollars.

2. Every policy issued in the nature of a permanent insurance shall continue in force for so long a time as the deposite money shall remain with the company (subject, nevertheless, to the other parts of these conditions); but any person insured, being the owner or proprietor of the building insured, may at any time reclaim his or her deposite money, which shall be paid, within three days after such demand, subject to a deduction of five per centum. And in all cases of sale of the property insured, where the policy is not transferred, the deposite money may be withdrawn, if applied for within sixty days after such sale, subject to a deduction of five per centum; but if not applied for, within the time, the said deposite money shall be considered as sunk for the benefit of the company.

3. In any case any insured shall assign or transfer his or her policy, such assignment or transfer shall be brought to the office of the company to be entered and allowed, within thirty days next after such assignment or transfer, and in default thereof, the benefit of the insurance, and all claims upon the company shall be lost. For every transfer of a policy, there shall be paid fifty cents.

The court being of the opinion that the plaintiff had a right of action and that the measure of damages was the cost of procuring perpetually the same amount of insurance on plaintiff's property entered judgment on the case stated in favor of plaintiff for $1,378.12. Defendant appealed.

*Error assigned*, among others, was in entering judgment for plaintiff on case stated.

*Arthur Biddle* and *George W. Biddle*, with them *Jere S. Black*, for appellant.—Under condition three of the policy the defendant is not bound to enter and allow an assignment of the policy to the plaintiff, but may in its discretion decline to approve such: Lynch v. Dalzel, 3 Brown, P. C. 497; Sadlers Co. v. Badcock, 2 Atkyns, 554; Ætna Fire Ins. Co. v. Tyler, 16 Wendell, 385; Park on Insurance, 595; Porter on Insurance,

301; May on Insurance, 5; 1 Wood on Insurance, 695; Biddle on Insurance, secs. 202, 623.

A perpetual policy of fire insurance, like the present, does not differ in its legal effect from a time or annual policy with regard to assignability; and the former is not assignable on an alienation of the property insured, without the consent of the insurer, any more than the latter; nor does the former run with the land: Boynton v. Farmers' Ins. Co., 43 Vt. 256.

Policies of fire insurance are not assignable in equity any more than in law, without the assent of the insurer, so as to permit the alienee of the property to recover in an action at law, as in the present, where such assignment has never been completed by its " entry and allowance " by the insurer: Mut. F. Ins. Co. v. Roberts, 31 Pa. 441; Biddle on Ins., secs. 262, 263.

The plaintiff was not the proper party to sue in this case.

The plaintiff was not entitled to sue, so long as there was an outstanding assignment of this policy, prior to that of the assignment in dispute.

The measure of damage has not been accurately determined.

The plaintiff's delay to prosecute this suit, should be fatal to his right to recover: Hemphill v. McClimans, 24 Pa. 371; Hoffman v. Stiger, 1 Pittsburg, 185; Hook v. Hook, 38 Leg. Int. 216; Morford v. Cook, 24 Pa. 92.

*Henry C. Niles,* with him *George E. Neff,* for appellee.—An assignment of a perpetual policy carries with it every right essential to its use and enjoyment: Rafsnyder's App., 88 Pa. 436; Ins. Co. v. Roberts, 31 Pa. 438; Buckley v. Garrett, 60 Pa. 333.

An insurance company cannot arbitrarily and without cause refuse to allow and approve an assignment: May on Ins. (ed. of 1873), p. 469.

This being a breach the plaintiff was entitled to whatever sum would be necessary to fully indemnify him, and place him in as good a position as he would have been had not the defendant deprived him of the valuable right: State Mut. Fire Ins. v. Roberts, 31 Pa. 443; Hemphill v. McClimans, 24 Pa. 367.

OPINION BY MR. JUSTICE WILLIAMS, July 15, 1896:

We think, with the learned judge of the court below, that

this case presents some questions that are new, and must be determined without much aid from our own decided cases. The plaintiff's right to recover is based upon a contract which describes itself as a policy "of permanent insurance." In the caption at the head of the policy it is also called "perpetual." It was issued by the defendant to John Hartman in May, 1839; and it undertakes in consideration of a deposit of $120 and certain charges for the policy, and the survey of the insured premises, "to be and remain forever liable to the said assured, his heirs, executors, administrators and assigns" for any loss that may be sustained by fire to the buildings insured not exceeding $4,000. This contract, unconditional and perpetual in its terms, is followed by a statement of the conditions upon which it is made, and of the manner in which the holder of the policy may at any time surrender it and reclaim his deposit, less by 5 per cent, and so terminate the contract. The only provision for the termination of the policy by the action of the defendant company must be gathered from the third of these conditions, which is in these words: "In case any assured shall assign or transfer his or her policy such assignment or transfer shall be brought to the office of the company to be entered and allowed, within thirty days next after such assignment or transfer, and in default thereof the benefit of the insurance and all claims upon the company shall be lost. For every transfer of a policy, there shall be paid fifty cents." This stipulation recognizes the permanent character of the insurance and the liability of the company to the holder of the policy, being also the owner of the property insured. All that is required of such holder is that he presents the policy, within thirty days after he acquires it, at the office of the company to have the transfer entered and allowed, and pays the fee of 50 cents for such entry and allowance. This had been done with the policy now in question on three different occasions; but when the plaintiff presented his assignment and transfer within the time required, and tendered the fee for the entry of the transfer upon the books of the company, he was met with a flat refusal. This action was brought to recover damages for such refusal. The question thus raised is whether the company may refuse to enter and allow a transfer of a perpetual policy, or is bound upon tender of the fee to allow the transfer and enter the name of the transferee upon

its books as the holder ? This depends upon the construction of the word " allow." This word is ordinarily equivalent to the word " permit," or to the words " consent to." Its use in any given case assumes the existence of a power to refuse to allow, permit, or consent to, and the right to elect whether to grant or withhold the allowance or permission asked for. But the nature of the contract, and its express recognition of the right of the insured to sell his policy with the property to which it relates, requires us to hold that this right to elect must be exercised not arbitrarily and at will, but for cause, and in harmony with the purpose and spirit of the contract. If the purchaser and transferee is a person whose financial condition, habits of life, or moral character are such as to increase the hazard against which the company has undertaken to indemnify the original policy holder, so that if the risk was now offered for the first time, it would be refused, it would not be reasonable to deny to the company the right to refuse the increased risk to which the transfer has exposed the insured property. But on the other hand, if the situation, habits and moral character of the transferee are unobjectionable, and do not increase the hazard of loss, it would not be reasonable to permit one party to a contract to terminate it without cause and against the protest of the other party.

In this case, the defendant company gave a reason for its refusal to enter and allow the transfer, and the validity of that action must depend on the validity of the reason on which it was based. When the plaintiff presented himself at the office of the company with the transfer of the policy and the fee for its entry and allowance in his hand, he was told that as a matter of business policy affecting its own interests, the company had decided not to consent to the transfer of old policies like that he had brought, but to terminate them as fast as a transfer became necessary by refusing to enter and allow such transfer. Was this a valid reason ? It was an attempt by one party to a contract to terminate its liability at its own election and for its own advantage against the protest of the other party to it. It was the exercise of a power reserved for its protection against risks it had not undertaken to insure against, in a purely arbitrary manner to relieve itself from risks it had undertaken to insure against, in violation of its contract and to the injury of the

holder of the policy.   It was therefore not a valid reason for
the action taken, and the action of the company in refusing to
enter and allow the transfer cannot be sustained.   It was a vio-
lation of the contract for "permanent insurance" of which the
plaintiff had a right to complain, and it afforded him a cause of
action against the company.

The next question presented relates to the measure of dam-
ages.   We see no reason for distinguishing this from any case
in which the plaintiff sues on a broken contract.   He may elect
whether he will acquiesce in the action of the defendant, treat
the contract as at an end, and recover back the consideration
paid, or whether he will refuse to recognize the action of the
defendant as terminating the contract, go into the market and
purchase what the defendant has refused to provide in the man-
ner contemplated by the contract, and call upon the defendant
to indemnify him against what it may cost when so obtained.
The plaintiff has chosen to stand upon the latter of these posi-
tions, if the court shall be of opinion that he has the legal right
to do so, and has submitted the facts upon which that question
may be determined in the case stated agreed upon in the court
below.   We hold that he has the right to stand upon the posi-
tion he has chosen, and to say to the defendant " you termin-
ated my policy in your own company in violation of its terms ;
you compelled me to buy insurance elsewhere ; you must now
indemnify me against the loss I have suffered in consequence
of your own wrongful repudiations of your contract."   This
point is ruled by American Life Insurance Company v. McAden,
109 Pa. 399.   The injury sued for was sustained by the plain-
tiff.   The loss was his.   As the purchaser of the property, and
the policy of perpetual insurance upon it, he had the right under
the express terms of the contract to present the policy for entry
and allowance by the company.   Its refusal was not supported
by any valid reason.   The damages resulting from such refusal
may be sued for by the plaintiff, who was compelled to suffer
them, without using the name of the party originally insured as
legal plaintiff.   It is not necessary to go into equity, for the
cause of action is one enforceable at law.   It grows out of a vio-
lation of a contract, and is properly redressed by the recovery
of damages by way of compensation.   The contract does not
run with the land in the common law sense of that phrase, but

it is in express terms a contract to indemnify the owner of the property insured, he being also the holder of the policy. It is a contract for the permanent, or perpetual insurance of the property subject to the implied condition that the hazard shall not be materially increased; and both by the nature of the contract and by its express words, it is made with the owner whether he becomes such by operation of law or by the act of him who was the owner at the time the contract was made. In this respect it is clearly distinguishable from the ordinary policy of insurance.

The assignments of error are overruled and the judgment is affirmed.