# Maguire, Appellant, *v.* Johnston.

*Contract—Breach—Nonsuit.*

In an action of assumpsit for breach of a contract, it appeared that the three plaintiffs entered into a contract with the two defendants to buy a railroad, if a trust company, the holder of the bonds, should buy in the railroad at a receiver's sale, and then sell it to plaintiffs and defendants. The plaintiffs were to facilitate a decree of sale, and the defendants were to pay the purchase money. The defendants were to form a new corporation which was to take title, and the bonds and stock of the new company were to be divided among the parties. No binding agreement was ever made with the trust company either before or after it became the owner of the road. After the trust company had purchased the road one of the plaintiffs informed a director of the trust company of a trick proposed by one of the defendants to cheapen the road in the estimation of the trust company so that it could be bought at a lower price. The director of the trust company thereupon refused to have any further dealings with plaintiffs and defendants as to the sale of the road to them. *Held,* that a nonsuit was properly entered.

Argued Nov. 4, 1903. Appeal, No. 137, Oct. T., 1903, by plaintiffs, from order of C. P. No. 1, Allegheny Co., Dec. T., 1901, No. 742, refusing to take off nonsuit in case of Edward J. Maguire, John A. Graver and Andrew Hopkins v. William D. Johnston and Thomas A. Watkins. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit for breach of contract.

On a motion to take off nonsuit, McFARLANE, J., filed the following opinion :

On this motion, we treat the evidence of the plaintiff as sufficient proof of the facts and we have, substantially, the following situation :

The plaintiffs, Maguire, Graver and Hopkins, claim damages from the defendants, William D. Johnston and Thomas A. Watkins, for breach of a written joint contract between the five parties, dated October 25, 1900.

The agreement recites that the Morton Trust Company, of New York, is the owner of $125,000 defaulted bonds of the Salem Railroad ; that Watkins and Johnston are willing to

guarantee the payment of $125,000 to the trust company on the condition that it foreclose the bonds and purchase the railroad, and within —— days sell and transfer the same to the Salem and Ohio Railroad Company, a corporation to be hereafter created under the laws of Ohio; that Johnston and Watkins will pay to the Morton Trust Company within —— days after acquiring title by the trust company the sum of $125,000. That Graver, Hopkins and Maguire agree to organize the new railroad company with a capital of $240,000, to be called the Salem and Ohio Railroad Company, immediately after the trust company has acquired the title to the Salem road; second, that the new company issue $165,000 of bonds, and to transfer them to Johnston and Watkins in full settlement of their payment, and to issue $240,000 stock to be divided among the five in designated proportion. All agree to work in concert to the end of acquiring title to the road on this basis.

The contract then contains this important provision: " It is understood, however, that in the event the Morton Trust Company fails to sell said railroad and convey title as aforesaid, this contract is to be null and void, otherwise to remain in full force and effect."

A part of the statement of claim offered in evidence states a part of the agreement of the parties. It is that the plaintiffs agree to procure the persons who had made defense to the suit to foreclose the bonds, to withdraw their defense or to permit the same to be adjudicated in favor of the plaintiff therein; to procure the trust company to push the suit to a conclusion; to buy it in at the sale, and to sell the same immediately thereafter to the defendants for $125,000, and the defendants (Johnston and Watkins) agree to join in the formation of the new railroad company; to procure the new company to purchase the railroad from the defendants for $165,000, bonds of the company, and in consideration of the services of the plaintiffs to transfer to them $170,000 of the stock.

The city of Salem, Ohio, constructed the railroad referred to, and issued $125,000 of bonds, which were a lien upon the road. The bonds were in default, and proceedings in foreclosure were begun by the State Trust Company, the

holder, the city of Salem was made a defendant, and filed a demurrer; a receiver was appointed, who took charge of the road, and managed it down to the time of the public sale.

Andrew Hopkins, one of the plaintiffs in this case, entered into negotiations with Walter S. Johnston, then the vice president of the State Trust Company, and afterwards a director of the Morton Trust Company, and Mr. Johnston said that his company would be willing to sell the road for $125,000 if it should become the purchaser, and a paper was prepared in the form of an agreement, which was never executed, for Mr. Hopkins's use, showing the terms on which the company would be willing to sell. This paper was exhibited by Hopkins to the defendants in this case, and was the assurance upon which the parties executed the contract in suit. It was in brief, that the trust company, if it purchased the road, would within sixty days either convey the road, or transfer its bid, or the bid of such persons as may bid in the property, to a purchaser or such person or corporation as may be designated by him for the sum of $125,000. The purchasers to co-operate with the trust company in facilitating the entry of a decree and sale of the road.

Soon after the execution of the contract in suit, Hopkins, Watkins and Johnston went to New York, and had an interview with Walter S. Johnston, then a director of the Morton Trust Company, with which the State Trust Company had merged, and which had become the holder of the bonds, and they were assured by Mr. Johnston that his company would sell the road as it desired only to recover what it had invested, with expenses, in all amounting to about $115,000.

On November 10, 1901, the defendants notified the plaintiffs that they canceled the contract. The plaintiffs refused to accede to this, and notified the defendants that they would hold them to performance.

The plaintiffs, or some of them, were of assistance in obtaining a withdrawal of the defense of the city of Salem, a decree was entered, and the railroad was sold on March 1, 1901, at public sale to Walter S. Johnston, presumably for the Morton Trust Company. Immediately after the road was "bid in" by Walter S. Johnston, he told Hopkins that he was now ready to carry out the arrangement.

After the notice of November 10, the defendants told Hopkins that the attempted cancelation did not apply to him, that they intended to buy the road for a lower price, and would give him an interest in the matter. Shortly before the sale on March 1, W. D. Johnston, one of the defendants, suggested to Hopkins that he procure the manager of the road to secure the breaking down of an engine on the occasion of a contemplated trip over the road by Walter S. Johnston, so as to delay him and disgust him with the property and induce him to sell it at a lower price, and about the same time W. D. Johnston wrote to the manager making the same suggestion.

After the sale on March 1, no steps were taken by any one towards the formation of the corporation contemplated in the contract of October 25, and no tender of the $125,000 was made by the defendants, but they made some effort to see Walter S. Johnston in regard to the purchase, and finally Mr. Watkins wrote asking him why he did not answer his letters, that they were ready to purchase the road for $115,000, and did not like such treatment, whereupon he was informed by Walter S. Johnston that he would not have any further dealings with him or the other defendant, and assigned as a reason the letter to the manager of the road which Hopkins had sent him or caused to be sent him after March 1, 1901. On April 12, 1901, Walter S. Johnston assigned his bid to another person, and, as we recall the evidence, at a better price than $125,000.

Evidence was taken as to the value of the road; although we were and are still of the opinion that the damages thus sought to be established were speculative and not the proper measure, and evidence was given by Hopkins as to his expenses and the value of his time.

We have not been furnished with the report of the testimony, but the foregoing is, we believe, a correct statement of the main facts, gathered from a great mass of evidence.

This is a case where five men agree with each other to buy a railroad, if the holder of the bonds should buy it at receiver's sale and then sell it to them, all to work in concert to that end, the plaintiff to facilitate a decree of sale and the defendants to pay the purchase money, the title to be put in a new corporation, the bonds and stock of which were to be divided among the parties. No binding agreement was ever made with the

holder of the bonds either before or after it became the owner of the road. Assuming that Walter S. Johnston had full authority to represent the trust company, we have the same situation. The contract provided that if the trust company failed to convey the agreement became void, and, in fact, the company did fail to convey.

The only grounds upon which the plaintiff could be entitled to recover are, first, that defendants broke the contract by the notice of November 10, and, persisting in their refusal to perform, are liable for their breach; and second, that their misconduct, or rather that of one of them, caused the failure of the scheme.

First. The plaintiffs having refused to accept the defendant's notice of intended breach, the contract was kept alive for the benefit of all parties: Zuck v. McClure, 98 Pa. 541. The fact that the notice was not withdrawn is evidence of a continued intention to refuse performance. Zuck v. McClure, supra.

The plaintiffs were bound to perform their part of the contract, which was to create a corporation immediately after March 1, 1901, all the parties acting in concert. They did nothing but watch the movements of the defendants. The arrangement with Walter S. Johnston, as evidenced by the preliminary paper, was that he would sell the road to these parties within sixty days after March 1. Before the expiration of that time he refused to have any dealings with the plaintiffs and sold the road to another. To provide against such an event the provision was inserted in the contract that the failure of the trust company to convey the road ended all liability of the parties. The defendants had sixty days to perform, and we cannot hold them liable because they failed to perform before the full expiration of that period, especially when Walter S. Johnston put it out of his power to make a conveyance or to assign his bid to them or the proposed corporation.

Second. The defendant, Watkins, had nothing to do with the suggestion of Johnston about the scheme to disgust the trust company with the road. These people occupied no relation of confidence to that company. There was nothing criminal in an attempt to buy the property at a lower figure and not even a breach of faith with the company. The pro-

posed trick is open to criticism, but it was in no way Mr. Hopkins's duty to disclose it to Walter S. Johnston, especially after the time had gone by when it was proposed to put it into effect. If the purchase fell through on this account, it was through Mr. Hopkins's own act. It may be that it was from a sense of duty that he communicated the facts to Mr. Johnston, but if the result was disastrous to his project he can blame only himself.

We do not, however, base our conclusion on this ground alone. Had there been a binding agreement with the trust company no such excuse would have availed it; but, in its absence, the mere fact that its officer assigned as a reason for not selling, that he would not do business with such people on account of a proposed scheme to which he objected, is not sufficient to support a verdict. Watkins is clearly not to blame, and a joint verdict on this second ground would be an injustice to him, and the defendants cannot be here separated.

Other questions have been raised by counsel for defendants which we do not think it necessary to discuss.

The motion to take off the nonsuit must be refused.

*Error assigned* was refusal to take off nonsuit.

*Henry A. Davis*, with him *William Galbraith*, for appellant.

*George R. Wallace*, with him *R. B. Ivory*, for appellees.

PER CURIAM, January 4, 1904:

This judgment is affirmed on the opinion of the learned judge below refusing to take off the nonsuit.

---

## Donnelly *v.* Frick & Lindsay Company, Appellants.

*Landlord and tenant—Distress—Trade fixtures—Presumption—Holding over.*

The presumption of the law, being in favor of trade, is that a tenant does not intend to make his trade fixtures part of the realty for the permanent benefit of his landlord, but will remove them before the end of his term; and it is only when he leaves without removing them during the term that an intention of making a gift of them to the landlord is to