## Delia v. Riley Stoker Corporation

*Carl F. Hepler, Jr.*, for plaintiff.
*Stephen I. Weiss*, for defendant.

RUFE, *J.*, October 2, 1980—This action concerns plaintiff Michael Delia's claim for disability retirement benefits (benefits) pursuant to a retirement plan (plan) created and funded by his former employer, defendant Riley Stoker Corporation/Baudenhausen Corporation (corporation).

Plaintiff is a former employe of the corporation and member of Local Union No. 5586 (local) of the United Steelworkers of America (USWA), to which Local the corporation's employees belonged. He applied for benefits after suffering a severe heart attack of October 27, 1971, but the Retirement

Committee (Committee) charged with administering the plan denied his application. Plaintiff brought this action against the corporation challenging the committee's denial and against USWA for its failure to arbitrate his claim pursuant to the Local's contract with the corporation.

Although both defendants were served, only the corporation has appeared and defended the action. This court tried this case without a jury, hence this opinion.

## STATEMENT OF THE ISSUES

The issues are:

1. Whether the corporation is contractually obligated to provide plaintiff benefits pursuant to the plan;

2. Whether the committee's determination concerning plaintiff's application for benefits is subject to judicial review;

3. Whether plaintiff's absences from work due to illness, or strikes accrued toward his "continuous service," as defined by the plan;

4. Whether plaintiff must have completed 15 years continuous service before he became "totally and permanently disabled," as defined by the plan, to qualify for benefits;

5. Whether plaintiff became "totally and permanently disabled," as defined by the plan, while he was still an employe;

6. Whether plaintiff may recover damages for anticipatory breach of an obligation to pay installments of money not due at the time he instituted this action.

## FINDINGS OF FACT

1. The corporation hired plaintiff on March 12, 1957.

2. As a result of his employment plaintiff became a member of Local No. 5586, USWA.

3. On or about March 17, 1969, the corporation and USWA on behalf of the local executed an "Agreement between Baudenhausen Corporation and the United Steelworkers of America—A.F.L.—C.I.O. Local Union No. 5586, March 17, 1969."

4. At all times relevant to this action the corporation maintained a "Retirement Plan for Employees of Baudenhausen covered by Collective Bargaining Agreement with Local No. 5586" ("Plan").

5. Section I of the plan defines "employee" as follows:

(9) "Employee" means a regular full time employee covered by the collective bargaining agreement with United Steelworkers of America, AFL-CIO, Local No. 5586.

6. Section XVI of the plan provides in pertinent part, that:

The general administration of the Plan shall be placed in a Retirement Committee of at least three members appointed from time to time by the Board of Directors of the [Corporation] to serve at the pleasure of said Board.

Subject to limitations of the Plan, the Retirement Committee, from time to time, shall establish rules for the administration of the Plan and the transaction of its business. The determination of the Retirement Committee as to any question involving the general administration of the Plan shall be conclusive.

Any discretionary actions to be taken under this Plan by the Retirement Committee with respect to the classification of Employees, contributions, or benefits, shall be uniform in their nature and applicable to all Employees similarly situated.

7. Section IV of the plan provides, in pertinent part, as follows:

Disability Retirement Date:

Effective January 25, 1963, an Employee included in the Plan who has completed at least fifteen (15) years Continuous Service and who becomes totally and permanently disabled on or after such date may retire and receive a Disability Retirement Benefit.

An employee shall be deemed to be totally and permanently disabled only if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit; and if such total disability shall have continued for a period of six (6) continuous months, and, in the opinion of a qualified physician, it will be permanent and continuous during the remainder of his life.

8. Section I of the plan defines "Continuous Service" as follows:

(10) "Continuous Service" means the actual total full years of continuous service rendered by the Employee to the [Corporation] excluding periods of layoff except as hereinafter provided. In determining "Continuous Service" there shall be included:

(a) Service with wholly owned subsidiaries and with corporations affiliated with the [Corporation] and affiliated with Riley Stoker Corporation.

(b) The period of service with the Armed Forces of the United States of America, provided that an Employee who left active service with the [Corporation] to enter and did directly enter such Armed Forces returned to active service with the [Corporation] within ninety (90) days of his honorable discharge from such Armed Forces, but an Em-

ployee will accrue no Future Service Benefits during such absence.

(c) The period during any authorized leave of absence.

(d) The first eighteen months of involuntary layoff.

9. Paragraph 98 of the agreement provides as follows:

Continuous employment, seniority and all its benefits shall cease except as otherwise provided for in this agreement, when an employee:

(a) Voluntarily quits
(b) Retires
(c) Has been discharged for cause
(d) Has taken other employment during his scheduled working hours with the [Corporation] or during leave of absence or during sick leave, if he is able to perform work available to him at this [Corporation]
(e) Does not return to work within three (3) working days after receipt of proper notice of recall unless able to present reasons for such failure to return to work which are acceptable to and approved by the Personnel Department and the Union Committee. Notice of recall shall be made by certified mail or telegram and when such notices are issued the Union Committee shall be furnished with a copy of same. Notice sent by certified mail (postage prepaid) or by telegram to the last address of the employee as it appears on the records of the company shall be sufficient. The employee takes the responsibility that the last address on the employment records of the [Corporation] is correct.
(f) Absences due to layoff in excess of the periods outlined below:

Active employment of Seniority terminates

| Active employment of | Seniority terminates |
|---|---|
| Up to 2 years | 2 years after layoff |
| Over 3 years | 3 years after layoff |
| Over 4 years | 4 years after layoff |
| Over 5 years | 5 years after layoff |

10. Plaintiff was absent from work from May 6, 1968 to May 7, 1969 due to a heart attack.

11. Plaintiff was absent from work from October 27, 1971 to August 9, 1972 due to a second heart attack.

12. Plaintiff's second heart attack occurred on October 27, 1971 and left him totally disabled.

13. Plaintiff was absent from work for several weeks due to strikes by the local.

14. Plaintiff's employment with the corporation terminated on August 9, 1972, when the corporation shut down the facility at which plaintiff worked.

15. Plaintiff received severance pay upon termination based on more than 15 years employment.

16. The seniority lists of the corporation show that plaintiff's absences due to heart attacks or strikes were not excluded in calculating his seniority.

17. In the opinion of the corporation's expert medical witness, Dr. Urbach, plaintiff became permanently disabled on October 27, 1971.

18. Dr. Urbach formed his opinion after August 9, 1972.

19. In the opinion of plaintiff's expert medical witness, Dr. Davidson, plaintiff became permanently disabled on or about March 27, 1972.

20. Dr. Davidson formed his opinion on or about March 27, 1972.

21. Both Dr. Urbach and Dr. Davidson agree that plaintiff became totally disabled on October 27, 1972, the date of his second heart attack, the dis-

agreement relating only to the determination of the permanency thereof. Plaintiff applied for disability benefits under the plan after his employment terminated, but the committee denied the application.

22. Plaintiff made demand on the corporation for benefits, but the corporation refused the demands.

23. Section V of the plan provides, in pertinent part, as follows:

Disability Retirement Benefit:

The Disability Retirement Benefit of an Employee eligible therefore shall be the amount of his accrued Normal Retirement Benefit as of Disability Retirement Date. Such benefit shall be payable monthly commencing with the first day of the month following the date application therefor is received by the Retirement Committee after proof of such disability is received and approved by the Retirement Committee, but in no event shall it be payable for any period earlier than the first day of the month following the expiration of six months from the date the disability was incurred, and thereafter shall be payable monthly. Disability Retirement Benefits shall terminate with the payment made on the first day of the month preceding the date of which any of the following events occur:

(a) The death of the retired Employee,

(b) The retired Employee's return to gainful employment,

(c) If made prior to the date the retired Employee reaches his sixty-fifth (65th) birthday, the Retirement Committee's determination, on the basis of medical evidence, that the retired Employee is no longer totally and permanently disabled,

(d) The refusal of the Employee to undergo a medical examination prior to the attainment of age sixty-five (65) as provided in Section IV.

24. Plaintiff would be entitled to monthly benefits of $221.21 if he qualified for benefits under the plan.

## DISCUSSION

### Whether the corporation is contractually obligated to plaintiff pursuant to the plan

The corporation argues in this post-trial brief that it is not a proper party to the action, a point it first raised in a side-bar conference at the close of the evidence. We infer from the argument that the corporation is either demurring or asserting a failure of consideration in defense to plaintiff's claim. Although we deem the issue waived for failure to raise it by preliminary objection or new matter, see Pa.R.C.P. 1028, 1030, we also decide the issue against the corporation on the merits.

The corporation relies on Section XV of the plan, which provides in pertinent part that "[T]his Plan is strictly a voluntary undertaking on the part of the [Corporation] . . ." The law, however, grants an employe the contractual right to enforce the provisions of an employe benefit plan if he has rendered services to his employer: Garner v. Girard Trust Bank, 442 Pa. 166, 275 A. 2d 359 (1971). We find no authority that an employer can defeat the employe's right, and overrule precedent, merely by disclaiming contractual liability. Since plaintiff performed services for the Corporation he has a cause of action against it. Garner, supra, and the corporation's argument on this point is without merit.

### Whether the committee's determination concerning plaintiff's application for benefits is subject to judicial review

Section XVI of the plan entrusts its "general ad-

ministration . . . [to] . . . a Retirement Committee" whose "determination as to any question involving the general administration of the Plan shall be conclusive." Although eligibility determinations are not expressly included in "general administration," the committee did make such determinations with respect to plaintiff. We presume that the authority to do so is granted by the provision in Section XVI that "[a]ny discretionary actions . . . by the . . . Committee with respect to . . . benefits . . . shall be uniform."

The corporation contends that the committee's actions are insulated from review, but that is not the law. Although courts have no power to re-write employe benefit plans they may review administrative decisions concerning such plans to ensure good faith and reasonable judgment: Garner, supra; Shore v. Bell Telephone Co. of Pa., 389 Pa. 445, 133 A. 2d 157 (1957); Forrish v. Kennedy, 377 Pa. 370, 105 A. 2d 67 (1954). We therefore conclude that plaintiff's claim is subject to judicial review.

Whether plaintiff's absences from work due to illness or strike accrued toward his "continuous service" as defined by the plan

Section IV of the plan provides, in pertinent part, that

[e]ffective January 25, 1963, an Employee included in the Plan who has completed at least *fifteen (15) years of continuous service* and who becomes totally and permanently disabled *on or after such date* may retire and receive a disability retirement benefit. (emphasis supplied)

Plaintiff was hired on March 12, 1957 and terminated on August 9, 1972 when the corporation shut down the plant at which he worked. His employment spans about 15 years, five months, but in

calculating "continuous service" the corporation would subtract the total time plaintiff was absent due to illness or strike. Since plaintiff was absent from May 7, 1968 to May 8, 1969 due to a heart attack, from October 27, 1971 to August 9, 1972 due to a second heart attack, and was also absent for several weeks due to union strikes, he would not have completed 15 years service if these absences are excluded from "continuous service."

Section I of the plan defines "continuous service" as

(10) . . . the actual total full years of continuous service rendered by the Employee to the [Corporation] excluding periods of layoff except . . .

(d) The first eighteen months of involuntary layoff.

The definition quite obviously does not exclude from continuous service absences due to illness or strike. It follows that plaintiff completed 15 years continuous service on March 12, 1972.

We note that paragraph 98 of the agreement defines "continuous employment," a term which is analogous to "continuous service:"

[c]ontinuous employment shall cease . . . when an employe:

(a) Voluntarily quits
(b) Retires
(c) Has been discharged for cause
(d) Has taken other employment . . .
(e) Does not return to work . . . after receipt of proper notice . . .
(f) Absence [sic] due to layoff in excess of [certain inapplicable lengths of time]

Nothing in the record suggests that circumstances (a) through (f) ever applied to plaintiff. In fact, the Corporation's seniority list showed that

plaintiff lost no seniority due to his absences, and received severance pay upon termination based on more than fifteen years' service. Even if the definition of "continuous employment" were read into "continuous service," an interpretation not expressly suggested by the corporation or warranted by the definition of "continuous service," we would still conclude that none of plaintiff's absences are excluded from continuous service, and he completed 15 years' continuous service on March 12, 1972.

Whether plaintiff must have completed fifteen years continuous service before he became "totally and permanently disabled," as defined by the plan, to qualify for benefits

The parties have apparently assumed that "on or after such date" in Section IV, supra, refers to the date when 15 years' service is completed, and that plaintiff's disability is compensable only if it occurred after March 12, 1972. The corporation, therefore, sought to prove plaintiff became disabled on October 27, 1971, before completing the service, whereas plaintiff sought to prove that he became disabled on or about March 27, 1972, after he completed the service.

We doubt that the parties assumed interpretation of "on or after such date" necessarily follows from the terms of Section IV, The only *date* appearing as such is January 25, 1963. Had the drafter intended the meaning assumed by the parties he could have readily substituted "thereafter" for "on or after such date," or used more explicit language, such as "on or after such completion." "On or after such date" is more logically construed to refer to January 25, 1963, such that plaintiff is eligible for benefits even if he became disabled *before* completing 15

years service. Applying the corporation's disability date of October 27, 1971 to our interpretation of Section IV, plaintiff qualified for benefits on March 12, 1972, when he completed 15 years' service.

Although we believe that our interpretation of "on or after such date" is the most logical one in a grammatical sense, we recongize that the meaning of the phrase is not free from doubt. Its ambiguity, however, does not vitiate our interpretation. We are free to construe ambiguities in employe benefit plans, Hardy v. H.K. Porter Co., Inc., 417 F. Supp. 1175 (E.D.Pa. 1976), affirmed in part and reversed in part without opinion, 562 F. 2d 42 (3d Cir. 1977), and we must resolve any ambiguities in favor of plaintiff, the employee: Levitt v. Billy Penn Corp., 219 Pa. Superior Ct. 499, 283 A. 2d 873 (1971). Since our interpretation is most favorable to plaintiff we adopt it rather than that assumed by the parties.

Even assuming arguendo that the parties assumed interpretation of "on or after such date" is correct, plaintiff could only have become "totally and permanently disabled" after he completed the 15 years' continuous service. Section IV, supra, further provides, in pertinent part, that

[a]n Employee shall be *deemed* to be totally and permanently disabled . . . if . . . total disability shall have continued for . . six (6) consecutive months . . . (emphasis supplied). Since even the corporation agrees that plaintiff has been *totally* disabled since October 27, 1971, he could not be deemed to be "totally and permanently disabled" before April 27, 1972, six months later. This date, of course, is later than March 12, 1972, when he completed fifteen years continuous service.

Whether plaintiff became "totally and permanently disabled" while still an employe

In addition to being totally disabled for six consecutive months the plan sets a second condition of deemed disability. Section IV more fully provides, in pertinent part, that

[a]n Employee shall be deemed to be totally and permanently disabled . . . if . . . total disability shall have continued for six (6) consecutive months and, *in the opinion of a qualified physician, it will be permanent* . . . (emphasis supplied.)

The corporation contends that the second condition of deemed disability is satisfied on the date the physician forms his opinion. It sought to prove that plaintiff satisfied this condition after August 9, 1972, when he was no longer an "employee" covered by the plan.[1] It also tried to show that Dr. Davidson formed his opinion of permanent disability in October or December, 1972, rather than on or about March 27, 1972 as he testified. Because plaintiff was not employed after August 9, 1972, he would not be covered by the plan nor entitled to benefits.

We disagree with the corporation's contention. The second condition of deemed disability is satis-

---

1. The corporation's premise is that an "employee" is one who is employed when he qualifies for benefits. Section IV, however, does not expressly require that an "employee" be employed when he otherwise qualifies for *disability* benefits. Normal and early retirement benefits depend only upon a minimum length of service, necessarily implying that an employe be employed when he qualifies for those benefits. Disability benefits, however, depend upon disability as well, and an employe may not be employed when he meets the disability requirement. Given the definition of "employee," it is not clear that a former employe who became disabled could not qualify for disability benefits.

Our analysis assumes, without determining, that an "employee" must be employed to qualify for disability benefits. This assumption is that most favorable to the corporation.

fied when an employe becomes permanently disabled, not when a qualified physician forms his opinion to that effect. Section IV, supra, does not state when the condition of permanent disability is satisfied. The substance of the condition is whether disability is permanent. The physician's opinion is only proof of when it became permanent and cannot rationally defer the occurrence of permanent disability.

That the second condition of deemed disability is satisfied when the disability actually becomes permanent is supported by the payment provisions of the plan. Section V of the plan provides that:

(disability) benefit(s) shall be payable monthly commencing with the first day of the month . . . after *proof* of such disability is received by the Retirement Committee . . . *but in no event shall (benefits) be payable for any period earlier than the first day of the month following the expiration of six months from the date the disability was incurred* . . . [2] (emphasis supplied).

A physician's opinion of permanence is certainly part of the proof of deemed disability. Upon satisfaction of this condition of proof, however, benefits are paid for the period beginning six months after the disability was incurred.[3] There is no restriction on paying benefits for periods prior to the date the physician forms his opinion. If the physician forms his opinion more than six months after the disability is incurred, benefits are payable for periods after

2 and 3. Section V states that payments begin when proof is received but is silent as to whether the payments include amounts for those months, if any, ending after the six month period but before the date proof is received. Since we must adopt the construction most favorable to the employe, Levitt, supra, we find that an employe is entitled to benefits for those months.

six months, rather than for periods after the date of the opinion. If the opinion is formed within the six month period, benefits are payable only for periods beginning after six months, again without regard to the date of the physician's opinion. This result is the only reasonable one, because deemed disability cannot occur unless total disability has continued for six consecutive months. Section V would make no sense if disability only became permanent on the date a physician forms his opinion.

In our analysis it is immaterial when Dr. Davidson and Dr. Urbach formed their opinions. Dr. Davidson testified that plaintiff's disability became permanent on or about March 27, 1972, and Dr. Urbach testified that it became permanent on October 27, 1971. Since plaintiff was employed by the corporation until August 9, 1972, he satisfied the second condition of deemed disability while still employed.

Even, assuming, arguendo, that the second condition of deemed disability is satisfied when a physician forms his opinion, Dr. Davidson's testimony concludes this issue adversely to the corporation. He testified that on or about March 27, 1972 he determined that plaintiff was permanently disabled as of that same date. Plaintiff was then an employe and met the second condition of deemed disability at that time. We need not consider Dr. Urbach's testimony that Dr. Davidson could not have formed his opinion before October, 1972, when plaintiff was no longer employed. Dr. Davidson testified as to his reasons for forming his opinion when he did, and we refrain from ruling that his reasons were insufficient merely because they would have been insufficient for Dr. Urbach. The plan merely requires the opinion of a "qualified physician" since there were no objections to Dr. Davidson's qualifications, his opinion is credible.

Whether plaintiff may recover damages for
anticipatory breach of an obligation to pay
instalments of money not due at the time he
instituted this action

Section V, supra, states that benefits are payable
in monthly instalments, and plaintiff prays for an
award in the amount of the present value of the
instalments he would have received based on his
actuarial life expectancy of April 27, 1972. Unfor-
tunately, for plaintiff, this is not the appropriate
measure of damage in this case.

We believe that the measure of damages is that
stated in Summers v. Prudential Life Insurance
Company of America, 319 Pa. 270, 179 Atl. 78
(1935). In Summers an insured sued his carrier for
nonpayment of disability benefits. The trial court
awarded damages in the amount of monthly in-
stalments that had accrued up to the time of trial.
The Supreme Court reversed and limited the dam-
ages to the instalments due on the date suit com-
menced. It wrote, at 319 Pa. 273, 179 Atl. 80, that:

"In courts of law it has always been held that a
plaintiff cannot recover sums not due and owing at
the time of suit. It is apparent that plaintiff's rights
to the instalments accrued from month to month,
and that upon defendant's refusal to pay any one of
them when due he could institute suit for that pay-
ment. Neither a single default nor a number of de-
faults would amount to a breach of the entire con-
tract. Each default would only affect . . . the spe-
cific payment involved. Thus, it is clear that at the
institution of the present suit, plaintiff's cause of
action comprised only the payments which had al-
ready become due. . . . "

Accord, Losnecki v. Mutual L. Ins. Co. of N.Y.,
106 Pa. Superior Ct. 259, 161 Atl. 434 (1932); see

also Sokolsky v. Occidental Insurance Co., 481 F. Supp. 36, 38 (W.D. Pa. 1979), for citation to other Pennsylvania cases. The doctrine of anticipatory breach in Pennsylvania seems to apply only to mutually executory contracts, see Maguire v. Johnston, 207 Pa. 592, 57 Atl. 64 (1904); Russell v. Barnes Foundation, 52 F. Supp. 827 (E.D. Pa. 1943), aff'd 143 F. 2 d 871 (3d. Cir. 1944), cert. denied 323 U.S. 771, 65 S. Ct. 122, 89 L. Ed. 616 (1944), and not to contracts wholly performed by the promisee, see Summers, supra, but see Marshall v. Franklin Fire Insurance Co., of Phila., 176 Pa. 628, 35 Atl. 204 (1896); 4 Corbin on Contracts, §963, fn. 17.

We note that Section IV of the plan provides that the corporation could subject plaintiff to biennial physical examinations to ensure continued disability as a condition precedent to benefits. However, we cannot distinguish the Summers line of cases on the ground that this condition precedent makes plaintiff's performance executory such that he may recover damages for anticipatory breach. See Corbin, §963, §967. In Losnecki the court refused to award damages for instalments beyond the commencement of suit, even though the insurer could have required the disabled insured to periodically submit proof of continued disability: 106 Pa. Superior Ct. at 262, 161 Atl. at 436. Nor can we rationally distinguish Summers and Losnecki on the ground that they concerned disability benefits under private insurance policies, whereas the instant case involves an employe's pension trust fund. We must, therefore, risk leaving plaintiff dependent on charity while any subsequent actions for past and future breaches drag their way through the courts. See Corbin, §969.

Since we must deny damages for instalments ac-

cruing between commencement of this action and trial, Summers, supra, we must a fortiori deny damages for instalments over plaintiff's actuarial life expectancy.

Plaintiff is entitled to judgment in the amount of monthly benefits of $221.21 per month for the period beginning May 1, 1972, the first day of the month following the expiration of six months from the date he incurred his disability, and ending December 31, 1973, the last day of the last month for which monthly benefits accrued before this action commenced, plus six percent simple interest thereon.

## CONCLUSIONS OF LAW

1. Plaintiff was covered by the disability benefit provisions of the plan.

2. Plaintiff has a contractual right to enforce the provisions of the plan against the corporation.

3. This court can review the decision of the committee denying plaintiff benefits.

4. The committee's denial of benefits was not made in good faith or with reasonable judgment.

5. Plaintiff became "totally and permanently disabled" within the meaning of Section IV of the plan on April 27, 1972, at which time he qualified for benefits.

6. Plaintiff was eligible to receive benefits beginning May 1, 1972.

7. Plaintiff is entitled to judgment in the amount of monthly benefits of $221.21 per month for the period beginning May 1, 1972, the first day of the first month following the expiration of six months after the date he incurred his disability, and ending December 31, 1973, the last day of the last month for which monthly benefits accrued before plaintiff commenced this action, plus six percent simple interest thereon.

## ORDER

And now, October 2, 1980, it is hereby ordered, adjudged and decreed that defendant Riley Stoker/Baudenhausen Corporation pay plaintiff Michael F. Delia the sum of $4,689.65, representing $221.21 per month for each month in the period beginning with May, 1972, the first month for which plaintiff qualified for disability benefits, and ending with December, 1973, the last month for which monthly benefits had accrued at the time he brought this action, which includes six percent simple interest thereon.